UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-897 JGB (KKx)** | Date | June 30, 2017 |
|---|---|---|---|
| Title | ***Kymberlee Arnold v. OSF International, Inc., d/b/a The Old Spaghetti Factory, et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff Kymberlee Arnold's Motion to Remand Action to State Court (Dkt. No. 16); (2) REMANDING the Action to State Court; and (3) VACATING the hearing on July 10, 2017 (IN CHAMBERS)

Before the Court is Plaintiff Kymberlee Arnold's Motion to Remand Action to State Court. (Dkt. No. 16.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of, and in opposition to the motion, the Court GRANTS the motion.

## I. BACKGROUND

On April 4, 2017, Plaintiff Kymberlee Arnold ("Plaintiff") filed a putative class action complaint against Defendants OSF International, Inc., d/b/a The Old Spaghetti Factory ("OSF") and Does 1 through 10 (collectively, "Defendants") in the Superior Court for the County of San Bernardino. ("Complaint," Dkt. No. 1-1.) Plaintiff brings the action on behalf of herself, and a putative class and subclass of similarly situated individuals. (Id. ¶ 7.) The putative class is defined as "all individuals who are or previously were employed by OSF in California, classified as non-exempt employees paid on an hourly basis, and scheduled for 'call in' or 'U Call US' shifts (the 'Class' or 'Class Members') at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the 'Class Period')." (Id.) The proposed subclass is defined as "Class Members whose employment with [OSF] terminated within three years prior to the commencement of this action through the date of trial (the 'Waiting Time Subclass')." (Id.) The Complaint alleges multiple

state law claims: (1) unfair competition in violation of California Business and Professions Code §§ 17200 et seq.; (2) failure to pay reporting time pay; (3) failure to pay wages for hours worked and for overtime wages; (4) failure to provide accurate itemized wage statements; (5) failure to pay wages upon separation of employment; and (6) enforcement of Private Attorneys General Act of 2004, California Labor Code §§ 2698 et seq. ("PAGA"). (Compl. at 1.)

OSF employed Plaintiff as a non-exempt employee from approximately January to August 2016. (Id. ¶ 19.) She was paid on an hourly basis. (Id.) In the Complaint, Plaintiff alleges OSF did not accurately record and pay Plaintiff and the putative class members for hours worked. (Id. ¶ 8.) Specifically, Plaintiff states:

> [OSF] systematically, unlawfully and unilaterally failed to accurately record all time worked by the Plaintiff and the Class Members on 'call in' or 'U Call Us' shifts . . . in order to avoid paying these employees the applicable regular and overtime compensation, including reporting time pay, time spent on regular on-call hours (and overtime hours generated by those on-call hours), and time spent on the phone when calling in.

(Id.) Plaintiff alleges she and the putative class's time was unduly restricted by the call in requirement; however, they were not compensated for the time during which they were "on-call." (Id. ¶ 14.) Plaintiff also alleges OSF maintained a "uniform policy and practice" to not pay the putative class members for all hours worked, (id. ¶ 8), which "allowed [OSF] to illegally profit and gain an unfair advantage over competitors who complied with the law." (Id. ¶ 16.) Because OSF failed to pay her and the putative Waiting Time subclass correct regular and overtime wages, Plaintiff asserts OSF also failed to pay all wages due upon separation, incurring penalties under California law. (Id. ¶ 20.) Additionally, Plaintiff claims OSF did not provide accurate itemized wage statements to the putative class. (Id. ¶¶ 54-57.)

OSF removed the action to this Court on May 9, 2017. ("Notice of Removal," Dkt. No. 1.) OSF asserts removal is proper under the Class Action Fairness Act ("CAFA"). (Notice of Removal at 3-15.) Plaintiff then filed the instant Motion to Remand ("Motion") on June 8, 2017. ("Motion," Dkt. No. 16.) OSF opposed the Motion on June 19, 2017. ("Opposition," Dkt. No. 19.) Plaintiff filed its reply memorandum on June 26, 2017. ("Reply," Dkt. No. 21.)

## II.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). CAFA vests federal courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and an amount in controversy that exceeds $5,000,000. 28 U.S.C. § 1332(d).

Generally, courts must "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "However, 'no anti-removal presumption attends cases invoking CAFA . . . .'" Garcia v. Wal-Mart Stores, Inc., No. CV 16-01645-BRO (RAO), 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart

Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)). Instead, Congress intended CAFA to be interpreted expansively. Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal. 28 U.S.C § 1446(a). To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." Serrano v. 180 Connect, Inc., 478 F.3d 1018,1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000." Garcia 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197). A removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart, 135 S. Ct. at 553. Where plaintiff questions the amount in controversy asserted, further evidence establishing that the amount alleged meets the jurisdictional minimum is required. Id. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

### III. DISCUSSION

**A. Summary of Argument**

Plaintiff moves to remand this action to state court. (See generally Mot.) In her Motion, Plaintiff argues OSF failed to prove that the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA.[1]

In the Notice of Removal ("NOR"), OSF alleges the amount in controversy requirement under CAFA is satisfied because Plaintiff alleges damages which, if sustained, could exceed $7,955,696. (NOR ¶ 38.) OSF's estimate of the amount controversy is based on five of Plaintiff's six claims: (1) failure to pay reporting time pay; (2) failure to pay wages for hours worked and for overtime wages; (3) failure to provide accurate itemized wage statements;

---

[1] The parties do not dispute the putative class is comprised of more than 100 members and the parties are minimally diverse as required by CAFA. (See Notice of Removal ¶¶ 4, 18-19, 22; see also Mot. at 3-9.)

(4) failure to pay wages upon separation of employment; and (5) PAGA.

| Cause of Action | OSF's Estimated Amount in Controversy |
|---|---|
| Reporting Time Pay | $968,250 |
| Failure to Pay Wages | $484,125 |
| Inaccurate Itemized Wage Statements | $933,800 |
| Failure to Pay Wages Upon Separation of Employment | $1,977,529 |
| PAGA | $2,000,852 |
| Attorneys' Fees | $1,591,139 |
| **TOTAL** | **$7,955,695** |

Plaintiff contests this calculation on three grounds. First, Plaintiff contends OSF's calculation as to her claim for reporting time pay makes unsupportable assumptions that inflate the calculation. (Mot. at 5-7.) In its calculations, OSF assumes every U Call Us shift results in a violation and assigns two hours of reporting time pay to every shift. (NOR ¶ 27.) Plaintiff argues OSF incorrectly assumes a 100% violation rate when Plaintiff makes no allegations, and OSF fails to present any evidence, regarding the percentage of U Call Us shifts where Plaintiff and the putative class members were told not to come in to their respective places of work. Second, Plaintiff asserts OSF incorrectly includes PAGA penalties in its calculation. (Mot. at 7-8.) Third, Plaintiff contests the inclusion of post-removal attorneys' fees in OSF's calculation. (Id. at 8.) Pursuant to her arguments, Plaintiff maintains the amount in controversy is $3,395,454, and thus below the statutory minimum of $5,000,000 under CAFA. (Id. at 9.)

| Cause of Action | OSF's Estimated Amount in Controversy |
|---|---|
| Reporting Time Pay | $~~968,250~~ |
| Failure to Pay Wages | $484,125 |
| Inaccurate Itemized Wage Statements | $933,800 |
| Failure to Pay Wages Upon Separation of Employment | $1,977,529 |
| PAGA | $~~2,000,852~~ |
| Attorneys' Fees | $~~1,591,139~~ |
| **TOTAL** | **$3,395,454** |

OSF addresses each of Plaintiff's contentions in its Opposition. As to the reporting time claim, OSF maintains it properly assumed a 100% violation rate based on the allegations in the Complaint, but revises its calculations to address Plaintiff's argument. (Opp'n at 8-10.) Relying on the declaration of Valerie Stinson, Director of Human Resources, OSF claims there was a potential violation rate of at least 87.7% for the putative class during the class period. (Opp'n at

9-10; see also Stinson Decl. ¶ 4.)[2] Extrapolating this data to the entire putative class for the class period, the revised reporting time claim value is $849,155.[3] Next, OSF contends the inclusion of PAGA penalties in its calculation is correct because Plaintiff pleaded her PAGA claim as a class action claim, not a representative claim. (Opp'n at 10-14.) OSF then recalculates the PAGA penalties pursuant to the revised reporting time calculation discussed above. (Id.) Finally, OSF argues that while it properly included attorney's fees in its calculation, even if the Court excludes its projected attorneys' fee figure, the amount in controversy requirement is still satisfied as it totals approximately $6,117,372. (Id. at 16.)

| Cause of Action | OSF's Estimated Amount in Controversy |
| --- | --- |
| Reporting Time Pay | $849,155 |
| Failure to Pay Wages | $484,125 |
| Inaccurate Itemized Wage Statements | $933,800 |
| Failure to Pay Wages Upon Separation of Employment | $1,977,529 |
| PAGA | $1,872,763 |
| Attorneys' Fees | $0 |
| **TOTAL** | **$6,117,372** |

**B. Analysis**

The resolution of this Motion turns on three issues: (1) the value of Plaintiff's reporting time claim; (2) whether it is proper to include PAGA penalties in a calculation of the amount in controversy under CAFA; and (3) whether post removal attorneys' fees are properly included in the calculation of the amount in controversy. Before addressing these issues however, the Court notes that for purposes of the analysis that follows, the Court relies on OSF's final calculation of

---

[2] OSF's revised violation rate is based on a data sample from the class period. According to Stinson, in March 2017, there were a total of approximately 999 U Call Us shifts for four California locations. (Stinson Decl. ¶ 4.) Of those 999 shifts, approximately 123 shifts resulted in the employee being called into work, (id.), while 876 shifts resulted in the employee not being called to work. Thus, 87.7% of the time, employees were not called into work for their U Call Us shift ((876/999) x 100 = 87.7%). (Opp'n at 9-10.)

OSF then extrapolates this data to the putative class. (Opp'n at 10.) According to OSF, the total number of U Call Us shifts during the class period is approximately 48,951. (NOR ¶ 25.) Of those shifts, 42,930 shifts resulted in an employee not being called into work (87.7% of 48,951 = 42,930). (Opp'n at 10.)

[3] In calculating the revised reporting time claim, OSF assumes 42,930 shifts resulted in an employee not being called into work and applies two hours of reporting time pay at the rate of approximately $9.89—the hourly wage of a putative class member during the class period—for a total of $849,155 (42,930 x (2 x $9.89)). (Opp'n at 10.)

the amount in controversy as set forth in its Opposition. (Opp'n at 16.) Pursuant to that calculation, the estimated amount in controversy is $6,117,372. (See id.) With that noted, the Court turns to the parties' contentions regarding the propriety of the inclusion of PAGA penalties in the amount in controversy calculation.

Pursuant to PAGA, an aggrieved employee may file suit to recover civil penalties for Labor Code violations on behalf of themselves, other employees, and the State of California. Cal. Labor Code §§ 2698 et seq. "[T]he civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Id. § 2699(f)(2). An aggrieved employee is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Id. § 2699(c). The California Labor and Workforce Development Agency receives seventy-five percent of the penalties collected in a PAGA action, while the aggrieved employees are entitled to the remaining twenty-five percent. Id. § 2699(i).

OSF includes nearly $2,000,000 of projected PAGA penalties in each of its calculations of the amount in controversy. (See NOR ¶¶ 31-36; see also Opp'n at 10-14.) Plaintiff contends PAGA penalties are not properly included in the calculation of the amount in controversy in the Ninth Circuit, (Mot. at 7-8), while OSF maintains the inclusion of the PAGA penalties is warranted because Plaintiff pleaded her PAGA claim as a class action, rather than a representative claim. (Opp'n at 10-14.)

In the Ninth Circuit, a PAGA claim is a representative claim, not a class action claim. Baumann v. Chase Inv. Serv. Corp., 747 F.3d 1117, 1124 (9th Cir. 2014) ("A PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief."); accord Arias v. Superior Court, 46 Cal. 4th 969, 975 (2009) (holding that PAGA actions are not class actions under California law). However, a PAGA claim may be brought as a class claim, if pleaded appropriately. Arias, 46 Cal. 4th at n.5 ("Actions under the Labor Code Private Attorneys General Act of 2004 may be brought as class actions.")

Here, relying on Diaz v. A&R Logistics, Inc., No. 15-cv-0520 DMS (RBB), 2015 U.S. Dist. LEXIS 73540, at *11-12 (S.D. Cal. May 29, 2015), OSF contends Plaintiff's PAGA claim is pleaded as a class claim and thus PAGA penalties may be considered in the calculation of the CAFA amount in controversy. (Opp'n at 11.) In support of this contention, OSF argues Plaintiff asserts a class action for various claims, including PAGA, on the face of the Complaint. (Id.) Additionally, OSF points to the fact that Plaintiff explicitly states "[t]he California claims are brought as a class action on behalf of similarly situated employees of [OSF] pursuant to California Code of Civil Procedure, Section 382," (id. (citing Compl. ¶ 5)), and specifically requests "certification of the case as a class action." (Id. (citing Compl., Prayer for Relief ¶ 1).) OSF also notes Plaintiff fails to make any other affirmative statement indicating that she is pursuing her PAGA claim solely on a representative basis. (Id.) In response, Plaintiff maintains "she did not seek class treatment of her PAGA claim," and points out the claim itself is titled "Representative Claim for Enforcement of Private Attorneys General Act of 2004." (Reply at 4 (citing Compl. at

15:2).) Plaintiff also notes her PAGA specific allegations never mention the word "class" and she does not purport to seek recovery of PAGA penalties on behalf of the putative class or proposed subclass. (Id. (citing Compl. ¶¶ 65-74).)

  While Plaintiff could have—and in practice should have—been more explicit regarding the nature of her PAGA claim, the Court finds the pleading of her PAGA claim in the Complaint, in combination with her representations in the Reply, sufficient to conclude that Plaintiff brings her PAGA claim as a representative claim, not a class action claim. (See Compl. ¶¶ 65-74; see also Reply at 3-4.) Additionally, the Court finds Diaz distinguishable. In Diaz, the district court considered PAGA penalties in calculating the CAFA amount in controversy because the plaintiff's PAGA claims were pled in a class action complaint and the plaintiff failed to disclaim PAGA claims from his class definition, and did not allege that the PAGA claims would be pursued on a non-class, representative basis. Diaz, 2015 U.S. Dist. LEXIS 73540, at *13. In reaching its decision, it relied on similar decisions, including Yocupicio v. PAE Group, LLC, No. CV 14-8959 (JEMx) 2014 WL 7405445, at *5 (C.D. Cal. Dec. 29, 2014), which stated: "Since this is a 'class action' [under § 382] and the PAGA claim is one brought by an 'individual class member[,]' § 1332(d)(6) instructs that this Court 'shall . . . aggregate[] [the amount] to determine [the amount in controversy].')." Yocupicio, 2014 WL 7405445, at *5. The Ninth Circuit subsequently reversed the decision in Yocupicio, holding that the amount sought by the plaintiff pursuant to their representative PAGA claim could not be aggregated with the amount sought by the plaintiff pursuant to his class claims to satisfy the amount in controversy requirement under CAFA. Yocupicio v. PAE Group, LLC, 795 F.3d 1057, 1060 (9th Cir. 2015). Thus, OSF's reliance on Diaz, which draws on the reasoning of the reversed district court decision in Yocupicio is misplaced. Because the Ninth Circuit has clearly held that a representative PAGA claim is fundamentally different from a class action, Baumann, 747 F.3d at 1121-24, thus barring consideration of the potential recovery value in a CAFA amount in controversy analysis, Yocupicio, 795 F.3d at 1060, the Court declines to consider OSF's estimates of PAGA penalties in its analysis here.

  Pursuant to OSF's calculations, the total estimated amount in controversy including projected PAGA penalties is $6,117,372. (Opp'n at 16.) Having concluded that inclusion of potential PAGA penalties in a CAFA amount in controversy analysis is improper, the Court must reduce OSF's estimate by $1,872,763. Pursuant to that reduction, the revised amount in controversy totals $4,244,609. As a result, OSF is unable to prove by a preponderance of the evidence that the amount in controversy in this action exceeds the $5,000,000 jurisdictional minimum under CAFA.

  Because the revised amount in controversy fails to meet the jurisdictional minimum of $5,000,000 under CAFA, the Court need not reach the parties' contentions regarding either the value of Plaintiff's reporting time claims or whether post removal attorneys' fees are properly included in the calculation of the amount in controversy calculation to remand this matter to state court. However, the Court notes it has serious concerns regarding OSF's calculations of the amount in controversy for Plaintiff's wage and hour claims, as well as the evidence submitted in support of those calculations. As noted by Plaintiff, there are significant and unexplained

discrepancies regarding the data sample used by OSF to calculate the violation rate it uses to estimate the value of Plaintiff's reporting time claim.  The declaration of Valerie Stinson states her analysis was based on "all four California OSF locations."  (Stinson Decl. ¶ 4.)  However, using OSF's website, Plaintiff found there to be eighteen OSF locations in California.  While Plaintiff does not submit evidence to the Court in this regard, Plaintiff's assertion is sufficient to cast doubt on the sufficiency of the sample OSF relied upon to make its calculations.  Again, the Court does not, and need not, decide the value of Plaintiff's reporting time claims—or whether post removal attorneys' fees should be included in the calculation—because the exclusion of PAGA penalties reduces the amount in controversy below the $5,000,000 jurisdictional minimum under CAFA.  Thus, on that basis the Court REMANDS this action to state court.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED, the action is REMANDED to state court, and the hearing on July 10, 2017 is VACATED.  Accordingly, OSF's Motion to Stay, currently scheduled for hearing on August 14, 2017, is DENIED as MOOT.  (Dkt. No. 17.)

**IT IS SO ORDERED.**